UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                          Chapter 13

       PAUL ANTHONY WAUGH,                Case No. 05-18105-ess

          Debtor.

------------------------------------------------------------x

MEMORANDUM DECISION DENYING DEBTOR'S MOTION TO REOPEN CASE AND
VACATE ORDER OF DISMISSAL

Appearances:

| | | |
|---|---|---|
| Paul Anthony Waugh | Marianne DeRosa, Esq. | Mary Lynn McCaffrey, Esq. |
| *pro se* | Chapter 13 Trustee | Schwall & Becker, Esqs. |
| | 100 Jericho Quadrangle | Attorneys for Emigrant Savings |
| | Suite 208 |   Bank |
| | Jericho, NY 11753 | 49 Maple Avenue, P.O. Box 796 |
| | | New City, New York 10956 |

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

On March 8, 2007, Paul Anthony Waugh, the above-captioned debtor (the "Debtor"),

filed a motion pursuant to Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil

Procedure 60(b) for an order reopening the above-captioned case and vacating the order of

dismissal entered on March 17, 2006 (the "Motion").  The Chapter 13 Trustee, Marianne

DeRosa (the "Trustee"), and Emigrant Savings Bank ("Emigrant") filed affirmations in

opposition to the Motion.  A hearing on the Motion was held by the Court on March 22, 2007

(the "March 22 Hearing"), at which the Debtor, the Trustee, counsel for Emigrant, and counsel

for Mickey Jun appeared and were heard.  For the reasons set forth below, the Motion is denied.

## Background

The Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United

States Code (the "Bankruptcy Code") on May 19, 2005 (the "Petition Date").  The Debtor has

proceeded *pro se* during the course of this Chapter 13 case.  Emigrant was the holder of a first

mortgage on the Debtor's real property located at 115-62 218th Street, Cambria Heights, New

York (the "Property"), which matured in December 2004.[1]  Prior to the Petition Date, in

November 2003, Emigrant commenced a foreclosure action against the Debtor and his wife,

Lorna M. Johnson,[2] in New York Supreme Court, Queens County, Index Number 27430/03 (the

"Foreclosure Action").  On or about July 19, 2004, Emigrant was awarded a Judgment of

---

[1]  On or about November 16, 1979, the Debtor and his wife entered into a 25-year
mortgage with Marshall Associates, Inc.  That mortgage was later assigned to Emigrant.

[2]  Lorna M. Johnson was the debtor in a Chapter 13 case involving this Property and
received a discharge on December 10, 1999, after completing her Chapter 13 plan.  *See In re
Lorna Johnson*, Case No. 94-85095-dte (Bankr. E.D.N.Y.).

Foreclosure and Sale.

On September 13, 2005, the Trustee moved to dismiss the Debtor's Chapter 13 case for failure to comply with the disclosure requirements established by Local Bankruptcy Rule 2003-1 and failure to submit Chapter 13 plan payments (the "Motion to Dismiss").  Docket, Entry 14.  A hearing on the Motion to Dismiss was held on September 26, 2005, at which the Debtor, the Trustee, and counsel for Emigrant appeared and were heard (the "September 26 Hearing").  That hearing was adjourned to November 21, 2005 (the "November 21 Hearing").  The Debtor did not appear at the November 21 Hearing, and the Court granted the Trustee's Motion to Dismiss and instructed the Trustee to settle a proposed order dismissing the case.

On December 5, 2005, the Trustee served the Debtor and Emigrant and filed with the Court a Notice of Settlement of Order Dismissing Case (the "First Proposed Dismissal Order").  Docket, Entry 15.  That same day, the Debtor filed opposition to the Motion to Dismiss (the "Opposition to the First Proposed Dismissal Order"), in which he argued that he had made the required disclosures and $4,121.80 in plan payments to the Trustee.  Docket, Entry 16.  On December 21, 2005, the Court entered an order scheduling a further hearing on the Trustee's Motion to Dismiss for January 17, 2006 (the "January 17 Hearing"), and directing the Debtor to appear at the January 17 Hearing.  Docket, Entry 17.

The Court adjourned the January 17 Hearing on the Motion to Dismiss to February 27, 2006 (the "February 27 Hearing").  By letter dated January 17, 2006, the Trustee advised the Debtor that the hearing on the Motion to Dismiss was adjourned, but stated that the adjourned date would be January 30, 2006, not February 27, 2006.  Docket, Entry 22.  Two days later, by letter dated January 19, 2006, the Trustee advised the Debtor of the correct adjourned date and

3

time of the February 27 Hearing.  Docket, Entry 23.

The Debtor did not file written opposition to the Motion to Dismiss or appear at the February 27 Hearing.  At that hearing, the Court granted the Trustee's Motion to Dismiss and instructed the Trustee again to settle a proposed order dismissing the Debtor's case.  On March 3, 2006, the Chapter 13 Trustee filed a second Notice of Settlement and Order Dismissing Case (the "Second Proposed Dismissal Order"), to be presented to the Court for signature on March 8, 2006.  Docket, Entry 26.  The Debtor did not file any written opposition to the Second Proposed Dismissal Order and on March 17, 2006, the Court entered an order dismissing the Debtor's Chapter 13 case (the "Dismissal Order").  Docket, Entry 27.

On April 28, 2006, the Debtor filed a motion for an order to show cause why the foreclosure sale of the Property should not be stayed and the Dismissal Order vacated (the "April 28 Order to Show Cause"), and an Application in Support of Motion and an Affidavit of Emergency (the "Application in Support of the April Order to Show Cause") stating that a foreclosure sale was scheduled for that same day at 11:00 a.m. (the "Foreclosure Sale").  Docket, Entry 30.  The Court's time stamp shows that the April 28 Order to Show Cause was filed at 12:48 p.m.  *See id.*  The Debtor argued that his "plan was paid up to February 2006" in the amount of $4,121.80, and that there were no post-petition payments due to Emigrant because the mortgage had ended on December 31, 2004.  Letter to the Court Attached to the Application in Support of the April Order to Show Cause ("Letter in Support"), Docket, Entry 30.  The Debtor also stated that "[t]he lawyer for Emigrant Savings Bank Mary Lynn McCaffrey acknowledged payment of $2,921.80 and offered to transfer this amount to the Trustee," and that he had informed the clerk of the Bankruptcy Court that he would be traveling outside of the country

4

from January 26, 2006, until February 15, 2006, and from February 28, 2006, until March 18, 2006. *Id.* The Foreclosure Sale took place on April 28, 2006, and Mickey Jun was the successful bidder. *See* Objection by Emigrant to Debtor's Motion ("Emigrant's Opposition") ¶ 4, Docket, Entry 41.

On May 2, 2006, the Debtor filed a motion for an order to show cause why the sale should not be overturned and the Dismissal Order vacated (the "May 2 Order to Show Cause" and, together with the April 28 Order to Show Cause, the "Proposed Orders to Show Cause"). Docket, Entry 31. On May 4, 2006, the Court entered an order denying the Debtor's request to stay the foreclosure proceedings and scheduling a hearing on May 10, 2006, on the Proposed Orders to Show Cause (the "May 10 Hearing"). Docket, Entry 32. The Debtor, the Trustee, and counsel for Emigrant appeared at the May 10 Hearing and were heard and the Court denied both of the Proposed Orders to Show Cause.

Almost nine months later, on January 30, 2007, the Debtor, again proceeding *pro se*, filed a voluntary petition for relief under Chapter 13 of Title 11 of the Bankruptcy Code (the "Second Chapter 13 Case"). *See In re Paul Anthony Waugh*, Case No. 07-40465-ess (Bankr. E.D.N.Y.). On March 8, 2007, the Debtor filed this Motion for an order reopening his first Chapter 13 case and vacating the Dismissal Order. Docket, Entry 38.

The Debtor argues that the Court should vacate the Dismissal Order for several reasons. First, the Debtor argues that Emigrant improperly billed him for monthly mortgage payments in June, July, August, and September 2005, after the mortgage had matured. Application in Support of Motion (the "Application in Support") ¶ 1, Docket, Entry 38. Second, the Debtor argues that at the September 26 Hearing, Emigrant's counsel misrepresented facts to the Court

by stating that the bank could not return the Debtor's payments totaling $2,921.80 to him

because the Debtor had "wired" those funds, when in fact, he made those payments by check.

Application in Support ¶¶ 3, 4.  Finally, the Debtor argues that after the September 26 Hearing,

"[t]he lawyer for Emigrant Savings Bank agreed to send my payment of $2,921.80 to the

trustee," and that at the November 21 Hearing on the Trustee's Motion to Dismiss, Emigrant's

counsel improperly failed to inform the Trustee and the Court that Emigrant had agreed to make

this payment to the Trustee.  Application in Support ¶¶ 4, 5.

On March 14, 2007, the Trustee filed an Affirmation in Opposition to the Debtor's

Motion (the "Trustee's Opposition").  Docket, Entry 39.  The Trustee argues that the Motion

should be denied because the Motion "does not contain any additional facts or evidence to

support an outcome different than was found on the previous [motions to vacate the dismissal]."

Trustee's Opposition ¶ 12.  The Trustee also argues that the Debtor's Motion lacks the

specificity necessary to vacate the Dismissal Order.  *See* Trustee's Opposition ¶ 13.

On March 20, 2007, Emigrant filed an objection to the Motion, and argues:

> The Debtor has fully exhausted all of his rights in the State Court Proceedings,
> having filed three Orders to Show Cause in order to attack or vacate the
> Foreclosure Judgment, all of which had been denied.  In addition, the Debtor
> exhausted all appellate rights in the State Court.  All of the issues raised in the
> instant application, have all been made at a prior time in the State Court action,
> and in the Debtor's motions to this Court as well, and this Court has already
> denied the exact same relief.

Emigrant's Opposition ¶ 3.

## **Discussion**

The Debtor seeks to reopen his first Chapter 13 case and to vacate the Dismissal Order

under Federal Rule of Bankruptcy Procedure 9024, which incorporates Federal Rule of Civil

Procedure 60.[3]  Federal Rule of Civil Procedure 60(b) lists six grounds for relief from a

judgment or order.  These are:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered
> evidence which by due diligence could not have been discovered in time to move
> for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated
> intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void; (5) the judgment has been satisfied, released, or
> discharged, or a prior judgment upon which it is based has been reversed or
> otherwise vacated, or it is no longer equitable that the judgment should have
> prospective application; or (6) any other reason justifying relief from the
> operation of the judgment.

FED. R. CIV. P. 60(b).  "Motions under Rule 60(b) are addressed to the sound discretion of the . .

. court and are generally granted only upon a showing of exceptional circumstances."  *Mendell v.*

*Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (citing *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.

1986)), *aff'd on other grounds*, 501 U.S. 115 (1991).  Rule 60(b) "may not be used as a

substitute for timely appeal [and] . . . [s]ince 60(b) allows extraordinary relief, it is invoked only

upon a showing of exceptional circumstances."  *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d

186, 190 (2d Cir. 2003) (quoting *Nemaizer*, 793 F.2d at 61-62).

---

[3]  Bankruptcy Rule 9024 provides:

> Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to
> reopen a case under the Code or for the reconsideration of an order allowing or
> disallowing a claim against the estate entered without a contest is not subject to
> the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a
> discharge in a chapter 7 liquidation case may be filed only within the time
> allowed by § 727(e) of the Code, and (3) a complaint to revoke an order
> confirming a plan may be filed only within the time allowed by § 1144, § 1230, or
> § 1330.

FED. R. BANKR. P. 9024.

A motion under Rule 60(b) "shall be made within a reasonable time, and for reasons (1),

(2), and (3) not more than one year after the judgment, order, or proceeding was entered or

taken." FED. R. CIV. P. 60(b).  The reasonableness element must be satisfied even where the

motion is brought within a year from the entry of the order at issue.  *See, e.g.*, *In re Bromstead*,

354 B.R. 649, 651-52 (Bankr. W.D.N.Y. 2006).  Here, the Debtor seeks relief under Rule

60(b)(3), and brought this Motion on March 8, 2007, just under one year after the Dismissal

Order was entered, on March 17, 2006.  Based on the entire record, including the fact that the

Debtor is not represented by counsel, the Court will consider the Motion to be timely and

address it on its merits.  *See In re Teligent, Inc.*, 306 B.R. 752, 758 (Bankr. S.D.N.Y. 2004)

("'[R]easonable time' depends on the facts of a given case, including the length and

circumstances of the delay, intervening rights, the possibility of prejudice to the opposing party

and the desirability that judgments be final.").

Turning to the grounds for relief under Rule 60(b), the Debtor does not allege "mistake,

inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).  Nor does he disclose

new evidence in his Motion "which by due diligence could not have been discovered in time to

move for a new trial under Rule 59(b)[.]" FED. R. CIV. P. 60(b)(2).  The Debtor does not suggest

that the Dismissal Order is "void" or that it "has been satisfied, released, or discharged." FED. R.

CIV. P. 60(b)(4), 60(b)(5).  Rather, the Debtor asserts that the Dismissal Order arose from "fraud

. . . , misrepresentation, or other misconduct of an adverse party." FED. R. CIV. P. 60(b)(3).

In substance, the Debtor argues that fraud, misrepresentation, and misconduct by

Emigrant caused him to make $2,921.80 in post-petition payments to Emigrant even though his

mortgage had matured, no post-petition payments were due, and his only debt to Emigrant was

8

for pre-petition arrears.  In addition, the Debtor argues that Emigrant, by its attorney, agreed to

transfer the $2,921.80 to the Trustee in satisfaction of the Debtor's monthly Chapter 13 plan

payment arrears.  Further, the Debtor asserts that Emigrant, by its attorney, misled the Court by

failing to disclose its agreement to transfer these funds and by stating inaccurately that it could

not return the funds to the Debtor because he had paid by wire transfer rather than by check.

And finally, the Debtor asserts that Emigrant never made this transfer and as a result, his case

was dismissed for failure to make plan payments to the Trustee.  *See* Application in Support 1-2.

At the outset, the Court notes that the Debtor has previously argued that Emigrant

engaged in fraud, misrepresentation, or misconduct by not making a payment on his behalf to the

Trustee, in support of the Proposed Orders to Show Cause, and to that extent, the Debtor seeks to

make arguments that this Court considered, and found unpersuasive, at the May 10 Hearing

when the Court denied the relief sought in the Proposed Orders to Show Cause.  *See* Letter in

Support. At the same time, the Court is mindful that papers filed by *pro se* litigants are "held 'to

less stringent standards than formal pleadings drafted by lawyers . . . .'"  *Hughes v. Rowe*, 449

U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Accordingly, the Court

will consider the merits of these arguments against the stringent "exceptional circumstances"

standard for vacating an order under Rule 60(b).  *See Mendell v. Gollust*, 909 F.2d at 731.

*Relief Under Rule 60(b)(3)*

To succeed on his Motion to vacate the Dismissal Order under Rule 60(b)(3), the Debtor

must prove by clear and convincing evidence that the order was procured by fraud,

misrepresentation, or other misconduct.  *See Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir.

1989); *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 173 (Bankr. S.D.N.Y. 2004).  To meet

this high burden, the Debtor must do more than make "conclusory allegations of fraud" and must

show that the alleged fraud, misrepresentation, or other misconduct was "material to the

outcome." *In re St. Stephen's*, 313 B.R. at 174 (citing *In re Chipwich, Inc.*, 64 B.R. 670, 676,

677 (Bankr. S.D.N.Y. 1986)).

Here, the Debtor argues that Emigrant agreed to make a payment on his behalf to the

Trustee and failed to perform on this agreement, to his detriment.  In particular, he states that

"[a]fter the hearing on September 26, 2005 . . . [t]he lawyer for Emigrant Savings Bank agreed to

send my payment of $2,921.80 to the trustee."  Application in Support ¶ 4.  The Debtor has not

offered any other evidence, such as a confirming letter or notation, in support of his assertion.

The Debtor also argues that at the November 21 Hearing, at which the Debtor did not appear,

Emigrant committed fraud by failing to advise the Court of this agreement.  *See* Application in

Support ¶ 5.  This alleged agreement and failure to disclose is the cornerstone of the Debtor's

argument that he is entitled to relief from the Dismissal Order.  At the March 22 Hearing on the

Debtor's Motion, Emigrant's counsel denied that the bank entered into the alleged agreement to

transfer funds on the Debtor's behalf to the Trustee.

The grounds for the dismissal of this Chapter 13 case were the Debtor's failure to make

plan payments to the Trustee.  *See* Dismissal Order, Docket, Entry 27.  Under

Section 1326(a)(1)[4] of the Bankruptcy Code, the responsibility for making Chapter 13 plan

payments lies with the Debtor, and not with any party that may be holding funds belonging to the

---

[4] The Debtor filed this Chapter 13 case before the October 17, 2005, effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Prior to the enactment of BAPCPA, 11 U.S.C. § 1326(a)(1) provided:  "Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed."

Debtor.  11 U.S.C. § 1326(a)(1).  Based on the entire record, the Court must conclude that the

Debtor has not shown, by clear and convincing evidence, that there was an agreement between

the Debtor and Emigrant that shifted his responsibility to cure the arrears in his Chapter 13 plan

payments to Emigrant.  For these same reasons, and based on the entire record, the Court must

conclude that the Debtor has not shown, by clear and convincing evidence, that Emigrant

committed fraud, misrepresentation, or misconduct, by failing to transfer funds to the Trustee or

failing to inform the Court of the existence of the alleged agreement.  And finally, the Court

must conclude that even if such an agreement could be proved, it is highly unlikely that it would

relieve the Debtor of his obligation to make plan payments to the Trustee or provide a basis to

vacate the Dismissal Order.

The Debtor also argues that Emigrant's counsel "misrepresented the facts" and "lied" to

the Court at the September 26 Hearing by stating that the Debtor "wired [the post-petition

payments] in so, you know, there is not any way for us to just return the check."  Application in

Support ¶ 3.  In support of this argument, the Debtor provides documentary evidence, in the form

of bank teller receipts, showing that he made at least two post-petition payments to Emigrant by

check.  Motion, Exh. 3 (Copies of August and September 2005 Mortgage Payment Receipts).

Even assuming that the Debtor made payments by check in response to all of the monthly

mortgage statements sent by Emigrant, and that Emigrant's counsel incorrectly stated at the

September 26 Hearing that "there [was] not any way for us to just return the check," those

circumstances do not affect the Debtor's responsibilities and obligations as a Chapter 13 debtor

under 11 U.S.C. § 1326(a)(1) to make his plan payments to the Trustee, or provide a basis to

vacate the Dismissal Order.  *See* Application in Support ¶ 3.  And as noted above, this Chapter

11

13 case was dismissed because the Debtor did not make his plan payments to the Trustee, not for

any reason relating to transactions between the Debtor and Emigrant.  As a result, the statement

of Emigrant's counsel at the September 26 Hearing, even if knowingly false when made, was not

"material to the outcome," and does not provide a basis under Rule 60(b)(3) to vacate the

Dismissal Order.  *In re St. Stephen's*, 313 B.R. at 174.  *See In re Chipwich*, 64 B.R. at 677.

The Debtor further argues that Emigrant "committed four (4) counts of fraud by

producing four monthly statements for mortgage payments in June 2005, July 2005, August

2005, September 2005," even though the mortgage term ended in December 2004.  Application

in Support ¶ 1.  In support of this argument, the Debtor provides documentary evidence, in the

form of copies of post-petition monthly mortgage statements sent by Emigrant (the "Post-

Petition Monthly Statements"), showing that he received statements for June, July, August, and

September 2005.  Motion, Exh. 1.

But here too, even assuming, as the record may suggest, that Emigrant attempted to

collect a pre-petition debt from the Debtor after this Chapter 13 case was filed in violation of the

automatic stay imposed by 11 U.S.C. § 362(a), those circumstances do not affect the Debtor's

responsibilities and obligations as a Chapter 13 debtor under 11 U.S.C. § 1326(a)(1) to make his

plan payments to the Trustee, or provide a basis under Rule 60(b)(3) to vacate the Dismissal

Order.  And again, the Dismissal Order was entered and this Chapter 13 case was dismissed

because the Debtor did not make his plan payments to the Trustee – a responsibility that was,

under the Bankruptcy Code, his and his alone.  Even a willful violation of the automatic stay

would not be a defense to the Debtor's failure to make his plan payments under the Bankruptcy

Code.

*Relief Under Rule 60(b)(6)*

Rule 60(b)(6) permits relief from an order for "any other reason justifying [it]." Fed. R. Civ. P. 60(b)(6). The "decision whether to grant the Debtor relief under Rule 60(b)(6) 'lies within the sound discretion of the bankruptcy court.'" *In re Kent Funding Corp.*, 290 B.R. 471, 477 (Bankr. E.D.N.Y. 2003) (quoting *In re Critical Care Support Servs.*, 236 B.R. 137, 141-42 (E.D.N.Y. 1999)). *See Aubain v. LaSalle Nat'l Bank (In re Aubain)*, 296 B.R. 624, 633 (Bankr. E.D.N.Y. 2003). The vacatur of an order under Rule 60(b)(6) may not be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). Such relief is not lightly granted, and the movant must demonstrate that "extraordinary circumstances" are present in order to prevail. *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 190 n.8 (2d Cir. 2006). *See* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 60.48[3] (3d ed. 2006) (citing *Liljeberg*, 486 U.S. at 863-64).

Here, the Debtor argues that as of September 26, 2005, the date of the September 26 Hearing, Emigrant held $2,921.80, in his funds and agreed to transfer those funds to the Trustee. Almost six months passed between the September 26 Hearing and the March 17, 2006, entry of the Dismissal Order. During that time, the Debtor was advised in many ways that Emigrant had not made any plan payments on his behalf to the Trustee. For example, on December 5, 2005, the Trustee served the Debtor with the First Proposed Dismissal Order, which stated that at the November 21 Hearing, "the Court found that the Debtor failed to submit timely Chapter 13 plan payments to the Trustee . . . and is $2,130.00 in arrears to the Trustee through the month of November 2005." Docket, Entry 15. Further, on December 21, 2005, the Court issued a scheduling order, which stated that the Court granted the Trustee's Motion to Dismiss at the

13

November 21 Hearing and directed the Debtor to appear at a further hearing on the Trustee's

Motion to Dismiss on January 17, 2006.  Docket, Entry 17.  The Trustee also sent the Debtor two

letters, dated January 17 and January 19, 2007, which advised the Debtor that there would be an

adjourned hearing on the Motion to Dismiss.  Docket, Entries 22, 23.  Finally, on March 3, 2006,

the Trustee served the Debtor with the Second Proposed Dismissal Order, which stated that at

the February 27 Hearing, "the Court found that the Debtor failed to submit timely Chapter 13

plan payments to the Trustee . . . and is $3,195.00 in arrears to the Trustee through and including

the month of February 2006."  Docket, Entry 26.

Yet it appears from the record that during this interval, the Debtor did not address the

matter of the alleged agreement, or Emigrant's failure to make the alleged payment, with

Emigrant or the Trustee.  Indeed, the record shows that the Debtor did not raise the matter with

Emigrant or the Trustee until he brought the April 28 Order to Show Cause, which was filed on

the same day as – and after the appointed time of – the foreclosure sale.

Under all of these facts and circumstances and based on the entire record, the Court must

find that the Debtor has not established "extraordinary circumstances" unrelated to the grounds

for relief under Rule 60(b)(1) through (b)(5) that warrant vacating the Dismissal Order under

Rule 60(b)(6).

## Conclusion

For the foregoing reasons, the Debtor's Motion for an order reopening this case and

vacating the Dismissal Order entered on March 17, 2006, is denied.  An order in accordance with

this Memorandum Decision shall be entered simultaneously herewith.

Dated: Brooklyn, New York
  April _**10**_, 2007

            _**S/ Elizabeth S. Stong**_
            ELIZABETH S. STONG
            UNITED STATES BANKRUPTCY JUDGE